IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


RICHARD C. ANKELE,

                                                          CV 04-743 ST

              Plaintiff,

                                                          FINDINGS AND
                                                          RECOMMENDATION

              v.

JOANNE B. BARNHART
Commissioner of Social Security,

                  Defendant.
_____

STEWART, Magistrate Judge:

## <u>INTRODUCTION</u>

Plaintiff, Richard Ankele ("Ankele"), brings this action pursuant to the Social Security

Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his claim for Disability Insurance

Benefits. For the reasons set forth below, the decision of the Commissioner should be reversed

and remanded for calculation and award of benefits.

## PROCEDURAL BACKGROUND

Ankele initially filed an application for benefits on July 13, 2001, alleging disability since April 1, 2000, due to a schizophreniform disorder. His application was denied initially and upon reconsideration. On March 27, 2003, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated April 23, 2003, the ALJ found that Ankele was not entitled to benefits. On February 20, 2004, the Appeals Council denied Ankele's request for review, making the ALJ's decision the final decision of the Commissioner. Ankele now seeks judicial review of the Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the

Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether claimant has one or more severe impairments. If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 CFR §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration (SSA) regulations, 20 CFR Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under step four. 20 CFR §§ 404.1520(d), 416.920(d).

Step Four.  The Commissioner determines whether claimant is able to perform work he or she has done in the past.  If so, claimant is not disabled.  If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five.  20 CFR §§ 404.1520(e), 416.920(e).

Step Five.  The Commissioner determines whether claimant is able to do any other work. If not, claimant is disabled.  If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled.  If the Commissioner does not meet this burden, claimant is disabled.  20 CFR §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant.  *Tackett*, 180 F3d at 1098.  At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id*

## ALJ's DECISION

At step one, the ALJ found that Ankele had not engaged in substantial gainful activity since the alleged onset of his disability on April 1, 2000.

At step two, the ALJ found Ankele has the medically determinable severe impairments of a lumbar strain with degenerative joint disease, bilateral carpal tunnel syndrome, a "substance-induced mood disorder versus psychotic disorder," and a substance abuse disorder, which are

severe in combination. The ALJ concluded, however, that when Ankele's substance abuse is not considered, he does not have a severe mental impairment.

At step three, the ALJ found that Ankele's impairments did not meet or medically equal the criteria of any listed impairments.

At step four, the ALJ found that Ankele was not fully credible and retained the residual functional capacity to perform a limited range of light exertion work, occasionally lifting 20 pounds, frequently lifting ten pounds, with a sit, stand, and walk option, but with limited ability to perform gross and fine manipulation and requires limited interaction with the public. As a result, he can not perform his past relevant work.

Because Ankele is a younger individual between the ages of 45 and 49 and has a high school education and no transferable skills, the ALJ found at step five that Ankele can work at such jobs as a parking lot attendant (light unskilled), microfilmer (sedentary unskilled), and food sorter (light unskilled). As a result, he found Ankele not disabled within the meaning of the Act.

## **DISCUSSION**

Ankele contends that the ALJ erred by: (1) rejecting the opinions of his treating physicians; (2) finding him less than fully credible; (3) finding that his substance abuse was material to a finding of disability; (4) rejecting the lay testimony; and (5) posing an inadequate hypothetical question to the vocational expert. In the alternative, Ankele seeks a remand to complete the record. Because the first contention is dispositive, the court need not address the other alleged errors.

///

///

## I.  Opinions of the Treating and Examining Physicians

Caleb Burns, Ph.D., performed a comprehensive psychological evaluation of Ankele on June 28, 2001, consisting of an interview, a mental status examination, and multiple psychological tests.  Tr. 236-54.[1]  Dr. Burns diagnosed schizophrenia, paranoid type, chronic; depressive disorder; methamphetamine abuse, currently in remission; and assessed a Global Assessment of Functioning ("GAF") score of 42.[2]  Dr. Burns stated:

> Because of his thought disorder symptoms, Mr. Ankele is not seen to be employable in any competitive work setting for the next 12 months.  If he is placed in a work setting, he will be unable to adhere to basic requirements regarding attendance, will be unable to work without disrupting other[s], will be unable to complete even a work day without interference from psychologically-based symptoms, etc.  Instead of employment, a day treatment program would be more appropriate for him.
>
> It should be noted that Mr. Ankele will be unemployable for the next 12 months *even if he does continue to refrain from all substance abuse.*

Tr. 248 (emphasis added).

Although he "carefully considered" this report which "has some support in the record," the ALJ rejected it, stating:

> However, Dr. Burns reported that the absence of substance abuse would not make any difference in the claimant's limitations (exhibit 9F:157), and the evidence shows that contrary to the claimant's assertions and Dr. Burns' belief, the claimant

---

[1]  Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

[2]  The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000).  It is essentially a scale of zero to 100 in which the clinician considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," not including impairments in functioning due to physical or environmental limitations.  *Id* at 34. A Global Assessment of Functioning (GAF) score between 41 and 50 indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)."  *Id* at 32.

was still using drugs and was far from abstinent.  Further, later
reports discussed below show that the claimant's functioning was
significantly improved when he stopped using drugs.  Dr. Burns'
report is therefore a fair assessment when the claimant is using
drugs and avoiding his treatment medication, but it is not an
accurate picture of the claimant when he remains clean and sober.

Tr. 22.

According to the record, Ankele had indisputable periods of sobriety and abstinence.

Although he used methamphetamine off and on throughout 2000, he was on probation

throughout 2001 and subject to random urinalysis testing.[3]  According to periodic urinalysis

testing by the Veteran's Administration, he gave positive tests for methamphetamine on

November 20, 2000 (Tr. 479), and again on July 18, 2001 (Tr. 323, 471), which resulted in his

admission to the hospital for a week (Tr. 260-89).  However, he gave negative tests for

methamphetamine and other illegal drugs on June 21, 2001 (Tr. 320, 323, 477), and again on

August 9, 2001 (Tr. 323).  It also appears that Ankele spent some time in jail in either May or

June 2001 where he would not be using drugs.  Contrary to the ALJ's conclusion, this does not

constitute evidence that Ankele was abusing methamphetamine on June 28, 2001, when he was

examined by Dr. Burns.  Instead, it reveals that between his episodes of relapse in late 2000 and

July 18, 2001, he maintained a reasonable level of stability and sobriety and was clean and sober

on June 28, 2001.

On January 31, 2002, Neil Matteucci, M.D., a psychiatrist, examined Ankele and

evaluated his mental status.  Tr. 337-344.  He diagnosed schizophrenia, chronic paranoid;

generalized anxiety disorder; and methamphetamine dependence in partial remission and

---

[3] Although the results of urinalysis testing performed by the probation office are not in the record, it is likely that any
negative results would have caused a revocation of Ankele's probation or noted by the medical providers.  The testing apparently
was done on a weekly basis.  Tr. 208 (November, 2001), 343 (January, 2002).

assessed a GAF score of 40, indicating some impairment in reality testing or communication, or a major impairment in several areas such as work, school, family relations, judgment, thinking or mood. Dr. Matteucci repeated his diagnosis and GAF assessments on February 20, 2002, and March 22, 2002. Tr. 332-333.

Although the ALJ gave these opinions "careful attention," he rejected them because "such a low GAF is not corroborated by the claimant's mental status examination and presentation (exhibit 10 F: 168-169),[4] and it is not considered an accurate assessment with respect to the claimant's functioning when he is clean and sober." Tr. 23.

It appears that the ALJ concluded that Dr. Matteucci's assessment was internally inconsistent because Ankele presented himself well. Dr Matteucci reported that Ankele was "well-groomed, good eye contact, cooperative, pleasant, with moderate psychomotor agitation." Tr. 341. He noted that Ankele's speech had a regular rate, rhythm, and normal volume, and that his vocabulary was appropriate for his background. His mood was "described as 'okay,'" and his affect was broad and "slightly anxious on presentation." Tr. 342. Dr. Matteucci described Ankele's thought processes as logical and goal-directed, though the content was "notable for ongoing auditory hallucinations." *Id*. Contrary to the ALJ's assumption, a person may appear to be pleasant and logical during a mental examination and yet be substantially unable to function.

Furthermore, the ALJ mistakenly assumed that Ankele was not clean and sober during Dr. Matteucci's examination. As noted above, the record reveals that Ankele was clean and sober after his drug use in mid-July 2001, except for using cocaine in November 2001, for which he served time in jail for three weeks (Tr. 347), and one positive test for alcohol on January 28,

---

[4] Exhibit 10F is Ankele's Veterans' Administration medical records, primarily Dr. Matteucci's reports. Tr. 329-351.

2002. Tr. 323, 336. According to the treatment notes during 2002, he was clean and sober while living in Blanchett House, a clean and sober environment, and in a hotel. Tr. 340, 518-524. There is no evidence in the record that Ankele was under the influence of any unprescribed substance during any of his three meetings with Dr. Matteucci.

On a referral by the parole officer to a Dual Diganosis Program, C. David Lynam, M.D., a psychiatrist, examined and evaluated Ankele on January 14, 2002. Tr. 353-356. Dr. Lynam diagnosed "Schizoaffective Disorder, Bipolar Type, and Amphetamine Dependence," and assessed a GAF of 35. Tr. 354. As to Dr. Lynam, the ALJ found that the "GAF is also quite low, in light of the claimant's rather intact mental status examination (exhibit 11F:204[)]. However, it is noted that the claimant, despite his assertions of abstinence, was still using drugs." Tr. 23.

The portion of Dr. Lyman's "intact mental status examination" cited by the ALJ reads as follows:

> The patient was on time for his appointment this morning. He is appropriately dressed and has good hygiene. He appears perhaps a little underweight. Eye contact is good. The client's speech is of normal rate and rhythm, but with little spontaneity. Prosody is intact. The patient rates his mood as a 5 on a 0-10 scale and has no suicidal ideation today. Affect is somewhat anxious and modest in range, but he relaxed as the session proceeded. The chief psychotic symptom he experiences is auditory hallucinations. Although when under-treated with medication, he experiences racing thoughts and impulsive behaviors. Ideas of reference occur when more frankly psychotic. The patient scored in the non-organic range on a standard test of cognition.

Tr. 354.

As with Dr. Matteucci, the ALJ apparently concluded that Dr. Lynam was not fully credible because his mental status examination was not consistent with his GAF assessment.

However, the ALJ fails to explain how Ankele's dress, hygiene, eye contact, and speech are inconsistent with a low GAF when he clearly suffers from auditory hallucinations.

Furthermore, there is no evidence to support the ALJ's assertion that Ankele was not abstinent at the time of the examination by Dr. Lyman. Drs. Burns, Lynam and Matteucci knew of Ankele's substance abuse problem, yet none of them voiced a suspicion that Ankele was using illegal drugs at the times of their evaluations.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F3d 1195, 1202 (9th Cir 2001); 20 CFR § 404.1527(d)(2). In general, the opinion of specialists concerning matters relating to their specialty are entitled to more weight than the opinions of nonspecialists. *Holohan*, 246 F3d at 1201; 20 CFR § 404.1527(d)(5). An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Holohan*, 246 F3d at 1202, citing *Reddick v. Chater,* 157 F3d 715, 725 (9th Cir 1998). If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, treating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR 404.1527. *Id*, citing SSR 96-2p. An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

The ALJ's determination that the opinions of Drs. Matteucci and Lynam are internally inconsistent is not supported by the record. There is no evidence to support the ALJ's

determination that Ankele was abusing substances at the time of these evaluations. Thus, the ALJ's rejection of the opinions of Drs. Burns, Matteucci and Lynam is not supported by specific, legitimate, or clear and convincing reasons.

## II. Remand For Payment of Benefits

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F3d 1172, 1178 (9th Cir), *cert denied,* 531 US 1038 (2000). The court's decision turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F2d 759, 763 (9th Cir 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F3d at 1178. The court should grant an immediate award of benefits when:

> (l) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*

The second and third prongs of the test often merge into a single question: whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See id* at 1178 n2.

The ALJ improperly rejected the testimony of Drs. Matteucci and Lynam as to Ankele's mental limitations. Ankele has established that he can no longer preform his past relevant work, and this case turns on whether the Commissioner has met her burden at step five of proving that Ankele retains the ability to perform other work in the national economy. The vocational expert testified that a person with the described limitations would be unable to sustain employment. Tr. 633-35. If credited, the doctors' testimony, coupled with the testimony of the vocational expert, establishes that Ankele cannot work on a regular and sustained full-time basis and, therefore, is disabled. Accordingly, this court recommends that this matter should not be remanded for further proceedings. *See Schneider v. Comm'r,* 223 F3d 968 (9th Cir 2000). *See also Reddick*, 157 F3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

In the alternative, Ankele seeks a remand to complete the record with his prior claim file in order to shed light on whether his drug abuse was material to a finding of disability. He has been diagnosed with schizophrenia since he was about age 19. Tr. 94, 281, 337, 353. He previously received benefits for a disability. Although the ALJ stated that it was "apparently in connection with a substance abuse disorder" (Tr. 20), Ankele believed that he received benefits for paranoid schizophrenia. Tr. 541. Those benefits terminated in April 2000.[5] Tr. 85. The reason for the termination does not appear in the record and could be due either to substance abuse, medical improvement, or a return to work. However, a remand to learn why Ankele

---

[5] As noted by the Commissioner, the termination month for benefits is the third month following the month in which a claimant's impairment is found to be not disabling. 20 CFR § 404.325. Because Ankele's benefits terminated in April 2000, his disability ceased in January 2000 before his alleged onset date of April 1, 2000. Therefore, based on the regulations, the record is complete without the prior claim file..

previously received benefits and why those benefits were terminated is unnecessary because Ankele is entitled to receive benefits based on the current record.

## RECOMMENDATION

For these reasons, the Commissioner's decision should be reversed and remanded pursuant to sentence four of 42 USC § 405(g) for the calculation and award of disability benefits.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due **May 26, 2005.** If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

Dated this 5th day of May, 2005.


s/ Janice M. Stewart_____
JANICE M. STEWART
United States Magistrate Judge